☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | Case No. 22-829M(NJ) |
| *or identify the person by name and address)* ) | |
| Records and information associated with the Facebook ) | **Matter No.: 2022R00055** |
| accounts with usernames: "Kingk Kingk" ID & "Yarisel ) | |
| Ortiz," fully described in Attachment A ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before  2/24/22                    *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable Nancy Joseph                    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   2/10/22 @ 3:13 p.m.          _____
*Judge's signature*

City and state:   Milwaukee, WI          Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the following Facebook Accounts: "Kingk Kingk" [ID #100075745935381], "Yarisel Ortiz" [ID #100077369432639, and "Yarisel Ortiz" [ID #100055146091393] that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from September 1, 2021, to the present;

(c)    All "Stories" posted by the account from September 1, 2021, to the present;

(d)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from September

1

1, 2021, to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(e) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(g) All other records and contents of communications and messages made or received by the account from June 1, 2019, to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(h) All "check ins" and other location information;

(i) All IP logs, including all records of the IP addresses that logged into the account;

2

(j)     All physical location data for the account, including any data collected from electronic devices associated with the account, from June 1, 2019, to the present;

(k)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(l)     All information about the Facebook pages that the account is or was a "fan" of;

(m)     All past and present lists of friends created by the account;

(n)     All records of Facebook searches performed by the account from June 1, 2019, to the present;

(o)     All information about the user's access and use of Facebook Marketplace;

(p)     The types of service utilized by the user;

(q)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(r)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

3

(s)     All records pertaining to communications between Facebook and any

person regarding the user or the user's Facebook account, including

contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government

within 10 days of issuance of this warrant.

Case 2:22-mj-00829-NJ   Filed 02/10/22   Page 7 of 44   Document 1

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of arson of commercial property, in violation of Title 18, United States Code, Section 844(i), for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     Evidence of the crimes described above;

(b)     Preparatory steps taken in furtherance of these crimes;

(c)     Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;

(d)     Evidence of motive, intent, or knowledge of the crimes described above;

(e)     Evidence about the relationships between the users of these accounts;

(f)     Evidence of the location, whereabouts, and patterns of travel of the user of the account;

(g)     Appearance, clothing, and identity of the user of the account;

(h)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(i)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(j)  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(k)  Evidence indicating that any person attempting to obstruct or impede investigations related to arson.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Records and information associated with the Facebook<br>accounts with usernames: "Kingk Kingk" ID  & "Yarisel<br>Ortiz," fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   22-829M(NJ)

## Matter No.: 2022R00055

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ 844(i); 1591(a)(1) | Arson and Sex Trafficking by Force, Fraud and Coercion; |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Digitally signed by RICKY HANKINS
DN: c=US, o=U.S. Government, ou=Dept
of Justice, ou=ATF, cn=RICKY HANKINS,
0.9.2342.19200300.100.1.1=1500100169
9456
Date: 2022.02.10 13:13:59 -06'00'

Special Agent Rick Hankins, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone                                *(specify reliable electronic means).*

Date:    2/10/22

*Judge's signature*

City and state:     Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# SEARCH WARRANT

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with the following Facebook user IDs: "Kingk Kingk" [ID #100075745935381], "Yarisel Ortiz" [ID #100077369432639, and "Yarisel Ortiz" [ID #100055146091393], that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc. dba "Facebook", a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent of the United States Justice Department's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.

1

That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4.      In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials.  I am re-certified annually as an ATF CFI. To date, I have participated in over 285 fire scene examinations and have testified as an expert regarding the same. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011.  I have received over 1,485 class hours of fire related training.  Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College.  I have also participated in over 215 live fire training exercises, where I started training fires and observed fire growth and development.  Finally, I was a full-time instructor at the ATF

2

National Academy from August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

5. I have previously applied for and received search and arrest warrants related to the crime of arson, as well as other crimes. I know from training as well as prior search warrants that business records, to include ledgers, bills, and other financial documents, can aid investigators in determining the financial health of a business at the time the business location suffered a fire. I also know from training and experience that fires are sometimes intentionally started by business owners in order to alleviate financial stress.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts as set forth in this affidavit, there is probable cause to believe evidence of a crime is located within the records and information associated with the following Facebook Accounts: "Kingk Kingk" [ID #100075745935381], "Yarisel Ortiz" [ID #100077369432639, and "Yarisel Ortiz" [ID #100055146091393] that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California. Specifically, evidence exists at the aforementioned locations related to the alleged acts of sex trafficking by force, fraud,

3

and coercion, and Federal arson perpetrated by Bobby MCNEIL (DOB: XX/XX/1979) in violation of Title 18, United States Code, Section 1591 (Sex Trafficking); Title 18, United States Code, Section 844(i) – use of fire to damage a building affecting interstate commerce; Title 18, United States Code, 844(h) – use of fire in furtherance of another Federal crime (sex trafficking). On or about February 1, 2022, MCNEIL is suspected of using or conspiring to use fire to damage a residential rental property located at 1532 South 21st Street in Milwaukee, Wisconsin that affected interstate commerce. Additionally, it is suspected the fire was perpetrated in furtherance of the sex trafficking by force, fraud, and coercion of a female victim, Y.O.R.

**PROBABLE CAUSE**

8.     On February 1, 2022, at approximately 2:30AM, fire damaged a residential rental property located at 1532 South 21st Street, Milwaukee, Wisconsin. Occupants of the residence woke to the sound of breaking glass and discovered a kitchen window broken and a fire burning by a nearby glass bottle on the floor. An occupant of the home, M.V., extinguished the fire. M.V. then exited the home and discovered a second glass bottle outside on the ground that contained liquid and there was a rag sticking out of it. The Milwaukee Police Department subsequently responded and documented the fire under incident #22-032-0025. The Milwaukee Police Department collected the suspected incendiary devices, Molotov cocktails, for laboratory analysis.

4

9. An occupant of the residence, E.T, stated he suspected the ex-boyfriend of Y.O.R. was responsible for the fire. E.T. explained that he had allowed Y.O.R. to stay at his residence and Y.O.R. had been recently harassed and beaten by a black male E.T. knew only as "Cedric Robinson." E.T. further stated that Y.O.R. was a prostitute that he had befriended and E.T. tried to help Y.O.R. get out of prostitution. E.T. later told ATF that he believed Cedric Robinson was a pimp to Y.O.R. because E.T. knew her to be a prostitute and Y.O.R. told E.T. that Robinson would beat her if she didn't give Robinson money she owed to him. E.T. also stated that Robinson had been harassing Y.O.R. leading up to the day of the fire.

10. ATF subsequently interviewed E.T. on February 2, 2022 and E.T. provided the following information:

11. E.T. stated he believed the ex-boyfriend and likely pimp to Y.O.R. was responsible for the arson to his residence on February 1, 2022. E.T. stated he knew Y.O.R.'s ex-boyfriend as a black male who she called "Cedric Robinson" and "King Messiah." E.T. further stated that Robinson had a Facebook username of "Kingk Kingk" [Facebook ID # 100075745935381]. E.T. also said Y.O.R. had used E.T.'s cellphone on or about January 30, 2022 to access Y.O.R.'s Facebook account. E.T. showed Agent Hankins Y.O.R.'s Facebook username as "Yarisel Ortiz" [Facebook ID #100077369432639] with a profile picture that depicted her image. E.T. stated that he was able to capture multiple screenshots of Y.O.R.'s Facebook communications with "Kingk Kingk" while Y.O.R.'s Facebook account was open on his cellphone. E.T. sent

5

the Facebook screenshots to Agent Hankins' government cellphone and Agent Hankins later inventoried those images.

12.     The Facebook screenshots provided by E.T. included an image of a black male sent by "Kingk Kingk" who E.T. stated was the black male he knew as Cedric Robinson aka "King Messiah."   The image is depicted below.   E.T. stated he had seen "Cedric Robinson" a couple times from a distance and the black male depicted below is consistent with the person he knew as Cedric Robinson.



*Facebook image of "Cedric Robinson" aka "King Messiah"*

13.     Below are images of screenshots captured by E.T. of communications sent from "Kingk Kingk" to Y.O.R. via Facebook Messenger.   E.T. opined that some of the

6

texts appeared to be inadvertent talk-to-text messages that were captured when Cedric Robinson may have had his Facebook account listening while Robinson was talking. E.T. stated he was familiar with Facebook enough to know that it is possible to have Facebook capture spoken statements as text messages if that feature is enabled and the user forgets to close the application on his/her cellphone.





fam she give a f*** about these n****** dick chasing and with these trick ass n****** and all this s*** damn she ain't thinking about her loved ones at all you a man but it's sick it's all good you know if that is a matter of mother f****** time my n***** a matter of time a m*********** can't stay in the shadows forever damn and you know what's up folks you

m*********** can't stay in the shadows forever damn and you know what's up folks you already know what's good you know what time it is with some gangsters money that's what a mother f****** stand on this s*** right here my n***** and this right here going to wake him up f*** all up cuz they going to feel sorry and more depressed about they m************ self once they see what unfold my n**** they're going to wish they never even perform the way they perform my n**** cuz purple preparations prevents all poor performances

Case 2:22-mj-00829-NJ   Filed 02/10/22   Page 18 of 44   Document 1



14.     E.T. stated he interpreted the above Facebook messages as Cedric Robinson searching for Y.O.R. and upset that Y.O.R. was hiding from him.  E.T. also stated he took it as a threat when Cedric Robinson referenced that people were impacting a "gangsters money" and were going to regret it.  E.T. further said the reference of "she" (Y.O.R.) being at the house on 21st and Orchard is a reference to Y.O.R.'s house at 1532 South 21st Street.

9

15.     On February 3, 2022, ATF conducted a second interview of E.T., at which time the following information was provided:

16.     E.T. stated he first met Y.O.R. when he stopped to help her after he saw her hit by a car while riding her bike.  E.T. said he and Y.O.R. started a friendship and he eventually learned she was a prostitute who wanted to leave her life situation.  E.T. said Y.O.R. would frequently say she wanted to get away from "Cedric Robinson", who E.T. believed to be her pimp.  E.T. stated that Y.O.R. had confided that Robinson had wanted to get professional photos of Y.O.R. in December 2021 so that Robinson could advertise Y.O.R. on the internet for prostitution.  E.T. said he believed that Robinson has kept Y.O.R. addicted to drugs so it is easier to prostitute her.  E.T. later said Y.O.R. told E.T. that Robinson would give Y.O.R. heroin and crack, and then Y.O.R. owed Robinson money.  E.T further said Y.O.R. told him that a large portion of her prostitution money is given to Robinson.  E.T. also said that Y.O.R. told him that she has been with Robinson for about 10 years, since she was 16.

17.     E.T. said that he also goes by the nickname "Jimmy" and Robinson knows E.T. as Jimmy.

18.     E.T. said Y.O.R. goes by the nicknames "Yaya" and "Yari".  E.T. also said Y.O.R. used to have the cellphone number (262) 595-9013 until late December 2021.  E.T. stated Y.O.R. no longer has her own cellphone.

19.     E.T. had previously provided screenshots of Facebook text messages sent by "Kingk Kingk" aka "Cedric Robinson / King Messiah" to Y.O.R., which were

10

inventoried as ATF Item #1. E.T. also stated he was able to save two Facebook voice messages sent by "Kingk Kingk" to Y.O.R. at approximately 2:00PM on January 30, 2022. E.T. said he forwarded the voice messages from the Facebook account for Y.O.R. to his own Facebook account under the name "Piculing Ortiz (Enste)". E.T. played the Facebook voice messages for ATF. Investigators recorded the Facebook voice messages and inventoried the recording as ATF Item #2. E.T. said he believes that Cedric Robinson did not know he was recording the message based on the statement at the end of the message. Y.O.R. was logged into her Facebook account on E.T.'s cellphone because she didn't have her own cellphone. The following is a summary of the Facebook voice message sent by "Kingk Kingk" to Y.O.R. on January 30, 2022 and forwarded by E.T. to his own Facebook account for preservation:

(Male voice)

*"…motherfucker think they can get over on me, or play me, or do me man, or misuse me… I don't play that shit… I'll get my payback one way or another… why do you think a nigga posted right now… the next individual motherfucker think they love, that's who you do… just stay parked right here…"* (sounds of vehicle traffic can be heard in the background of the audio) *"…who was that? Who was that?... no, that's some other bitch…this is hilarious… all I did was show love… and motherfucker show nothing but hate back… and trusting and believing and loving trick-ass niggas that pay for pussy… like they going to save her… my patience is running thin… I'm going to make a motherfucker crocodile tears… if I can't catch a motherfucker right now… with this next move… what? What was recording?"* (The audio recording then abruptly stopped)

20. E.T. stated Y.O.R. had previously contacted him using Cedric Robinson's cellphone number (414) 275-2187. E.T. said Y.O.R. had told him that Cedric Robinson

11

would beat her, and she would occasionally contact E.T. to pick her up from the apartment building located at 2600 West National Avenue. E.T. stated he convinced Y.O.R. to get away from Cedric Robinson by traveling to Florida. E.T. said he drove Y.O.R. to stay with her family in Florida on or about January 5, 2022. E.T. further said Y.O.R. accidentally called Robinson from E.T.'s unblocked cellphone while they were traveling to Florida and that is how Robinson learned of his cellphone number.

21.    E.T. provided screenshots of the text message history on his cellphone with phone number (414) 275-2187. Those screenshots were inventoried as ATF Item #3. The text history is depicted below. E.T. stated you can tell when Y.O.R. was using the cellphone versus Robinson based on the tone of the text message.





Case 2:22-mj-00829-NJ   Filed 02/10/22   Page 23 of 44   Document 1





22.     E.T. stated that he had driven Y.O.R. to Florida on January 5, 2022 and she stayed in Florida for about 3 weeks and had even started a job.  However, E.T. said Y.O.R. informed him at some point that she was flying back to Milwaukee on January 26, 2022 on Spirit Airlines.  E.T. further said it was difficult for Y.O.R. to stay away from Milwaukee because Milwaukee is where her young children are being raised by her mother.  E.T. further said Y.O.R. is not allowed to see her children.  E.T. stated Y.O.R.'s flight landed at approximately 12:36PM on January 26, 2022 in Milwaukee.  E.T. also said Y.O.R. would not tell him who paid for her plane ticket, but he assumed that Robinson had paid for the ticket.

23.     E.T. said Y.O.R. called him on January 26, 2022 to pick her up from Robinson's apartment building located at 2600 West National Avenue.  E.T. asked why she was at that location and she informed him that she stopped at 2600 West National because that is where she had left her only winter coat.  E.T. stated that Y.O.R. told him that she intended to live with E.T. and start a new life.  E.T. further said Y.O.R. even later showed him the paperwork she completed to obtain a Wisconsin ID using his address.

24.     When E.T. pulled up to 2600 West National Avenue on January 26, 2022, he stated that he watched Y.O.R. walk out of the building with Cedric Robinson following behind her.  E.T. further said Ortiz-River jumped into the front passenger seat of his vehicle and told him to quickly drive away.  E.T. stated that Y.O.R. told him that she lied to Cedric Robinson by telling him that she was going outside to get money

15

from a previous prostitution customer. E.T. further said Robinson had previously seen E.T. drive E.T.'s blue Jeep.

25.     E.T. stated that he began getting multiple phone calls from Robinson after he picked Y.O.R. up on January 26, 2022, which he mostly ignored. E.T. said he also received the above featured text message from Robinson at approximately 4:19PM on that same date in which Robinson called E.T. an "amateur" for his "dip" into a "professional business."

26.     E.T. also said he believed Robinson was parked on his street when he sent the following text message to E.T. at approximately 1:50AM on January 27, 2022: "I'm out here"

27.     E.T. stated that he and Y.O.R. were watching Netflix in his bedroom during the evening hours of January 30, 2022 when they both fell asleep. E.T. stated he woke up around midnight to find Y.O.R. reading a Facebook message on her Facebook account on E.T.'s cellphone from "Kingk Kingk" (Robinson). E.T. said the message from Robinson told Y.O.R. that she could not hide and would eventually be caught by Robinson. E.T. also said the message included a veiled threat to Y.O.R.'s family by saying what she was doing could impact them. E.T. said Y.O.R. was visibly upset and he tried to console her. E.T. further said he subsequently fell back asleep and later woke up at approximately 7:00AM and Y.O.R. was gone. E.T. said he immediate drove around the area and located Y.O.R. walking in an alley. E.T. said Y.O.R. asked to be driven to the area of Burnum and 10th Street so she could walk to a friend's house. E.T.

stated he did not see which house she walked into, if any at all.  E.T. said he has not seen Y.O.R. since that day.

28.     E.T. also showed investigators his call log from January 31, 2022 when he had received a call from (414) 275-2187 at 11:09AM.  E.T. said he answered the phone and it was Y.O.R. who started to talk but then stopped because he heard Robinson in the background asking her why she called when he was still telling her what to say.  E.T. further said Y.O.R. sounded like she was crying and hung up the phone.  E.T. stated he called back but no one answered.  E.T. said Y.O.R. subsequently called him back and asked to be picked up but he told her he could not because he was at work.  E.T. said that he had a feeling that Robinson was trying to set him up because Robinson knew E.T. carried a handgun with a concealed carry permit.  E.T. stated that Y.O.R. had previously told E.T. that Robinson had wanted her to steal E.T.'s handgun for Robinson.

29.     E.T. said that he received a call from (414) 275-2187 at 5:00PM on January 21, 2022 but he did not answer the call.  E.T. further stated he called the number back at 5:14PM and Robinson answered the call.  E.T. said that Robinson told him that Y.O.R. could not talk right now because his penis was in her mouth, and then hung up the phone.

30.     E.T. later provided Agent Hankins information regarding a previous Facebook account used by Y.O.R. under the name "Yarisel Ortiz" [Facebook ID #100055146091393].  E.T. said Robinson has access to this account because Y.O.R. told

17

him that Robinson was using this old account to message her new Facebook account while she was staying in Florida.

31.     E.T. later stated he had located a possible online prostitution ad featuring a likely photograph of Y.O.R. on the website skipthegames.eu, with a phone number of (773) 780-3478.  The ad was posted for Rockford, IL.  E.T. further said the postings for the ad ended on January 5, 2022, when Y.O.R. left for Florida and resumed again on January 26, 2022 when Y.O.R. returned to Milwaukee.

*Identification of "Cedric Robinson" as BOBBY LASHAUN MCNEIL*

32.     On February 3, 2022, ATF Task Force Officer (TFO) Alexis Krusic broadcast a request for assistance to law enforcement agencies in the Milwaukee Metro area.  Specifically, TFO Krusic requested assistance identifying a black male known only as "Cedric Robinson" aka "King Messiah", depicted below, which was inventoried as ATF Item #1.

18



*Facebook image of "Cedric Robinson" aka "King Messiah"*

33. New Berlin Police Department Detective Joshua Guavara responded to the request stating that facial recognition software had potentially identified "Cedric Robinson" aka "King Messiah" as Bobby Lashaun MCNEIL (B/M, DOB: 10/18/1979). The facial recognition software had identified a Milwaukee County Jail booking photograph of MCNEIL as 99.8% similar to the image depicted above. The side-by-side images of "King Messiah" and Bobby MCNEIL are depicted below.

(Images depicted below are not positive identifications. They are to be used only as investigative leads)

**+** Organization Filters





| | |
|---|---|
| **Similarity:** | 99.8% |
| **Identifiers:** | Bobby Mcneil (DOB: October 1979) |
| **Organization:** | Milwaukee County Jail |

34.     According to Milwaukee County Jail records, Bobby MCNEIL has used the following aliases and nicknames: Messiah Robinson, Robinson Messiah, King Messiah, Cedric Johnson, and Bam Bam.

35.     On February 8, 2022, E.T. contacted Agent Hankins and stated he had independently identified Bobby MCNEIL as the black male he knew as "Cedric Robinson" by researching nicknames on the Wisconsin Consolidated Court Automation Programs (CCAP) and then comparing images of old Facebook profiles under the name "Bobby Mcneil".

## FACEBOOK FUNCTIONALITY

36.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

37.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

20

38.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

39.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Depending on the user's privacy settings, Facebook may also obtain and store the physical location of the user's device or devices as they interact with the Facebook service on those devices.

40.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status"

21

updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

41. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

42. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the

22

profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

43. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

44. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

45. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

46. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

47.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

48.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

49.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.  Based on my training and experience, I know that Facebook can provide real-time and historical location information for the device or devices using a Facebook account, including the date and time associated with a latitude and longitude.

50.     Facebook further maintains a functionality it refers to as "Stories," whereby users can post photos and videos using Facebook's "in app" camera, frequently utilizing filters and additional text.  After a user "posts" a "Story," the "Story" will be available to their "friends" for a 24-hour period, appearing at the top of their "News Feed" in the application.

24

51.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

52.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further,

25

Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

53. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## CONCLUSION

54.     Based on the foregoing, I believe there is probable cause to show there is evidence of a crime located within the records and information associated with the following Facebook Accounts: "Kingk Kingk" [ID #100075745935381], "Yarisel Ortiz" [ID #100077369432639, and "Yarisel Ortiz" [ID #100055146091393] that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California.  Specifically, evidence exists at the aforementioned locations related to the alleged acts of sex trafficking and Federal arson perpetrated by Bobby MCNEIL (DOB: XX/XX/1979) in violation of Title 18, United States Code, Section 1591 (Sex Trafficking); Title 18, United States Code, Section 844(i) – use of fire to damage a building affecting interstate commerce; Title 18, United States Code, 844(h) – use of fire in furtherance of another Federal crime (sex trafficking).  On or about February 1, 2022, MCNEIL is suspected of using or conspiring to use fire to damage a residential rental property located at 1532 South 21st Street in Milwaukee, Wisconsin that affected interstate commerce.  Additionally, it is suspected the fire was perpetrated in furtherance of the coerced sex trafficking of a female victim, Y.O.R.

27

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to records and information associated with the following Facebook Accounts: "Kingk Kingk" [ID #100075745935381], "Yarisel Ortiz" [ID #100077369432639, and "Yarisel Ortiz" [ID #100055146091393] that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.**     **Information to be disclosed by Facebook**

        To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

        (a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

        (b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from September 1, 2021, to the present;

        (c)    All "Stories" posted by the account from September 1, 2021, to the present;

        (d)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from September

1

1, 2021, to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(e)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(g)     All other records and contents of communications and messages made or received by the account from June 1, 2019, to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(h)     All "check ins" and other location information;

(i)     All IP logs, including all records of the IP addresses that logged into the account;

(j)     All physical location data for the account, including any data collected from electronic devices associated with the account, from June 1, 2019, to the present;

(k)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(l)     All information about the Facebook pages that the account is or was a "fan" of;

(m)     All past and present lists of friends created by the account;

(n)     All records of Facebook searches performed by the account from June 1, 2019, to the present;

(o)     All information about the user's access and use of Facebook Marketplace;

(p)     The types of service utilized by the user;

(q)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(r)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(s)     All records pertaining to communications between Facebook and any

person regarding the user or the user's Facebook account, including

contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government

within 10 days of issuance of this warrant.

4

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of arson of commercial property, in violation of Title 18, United States Code, Section 844(i), for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     Evidence of the crimes described above;

(b)     Preparatory steps taken in furtherance of these crimes;

(c)     Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;

(d)     Evidence of motive, intent, or knowledge of the crimes described above;

(e)     Evidence about the relationships between the users of these accounts;

(f)     Evidence of the location, whereabouts, and patterns of travel of the user of the account;

(g)     Appearance, clothing, and identity of the user of the account;

(h)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(i)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(j)      The identity of the person(s) who created or used the user ID, including

records that help reveal the whereabouts of such person(s); and

(k)      Evidence indicating that any person attempting to obstruct or impede

investigations related to arson.